IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SUSANA GUTIERREZ | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | NO. 1:23-CV-833-DAE |
| | § | |
| ASCENSION SETON D/B/A DELL | § | |
| CHILDREN'S MEDICAL | § | |
| CENTER, | § | |
|    Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

The Texas Center for Pediatric and Congenital Heart Disease ("the Heart Center") at Defendant Ascension Seton's Dell Children's Medical Center is a toxic, misogynistic workplace, where women are subjected to sexist comments as well as insulted and demeaned by male providers. On at least one occasion, a female employee was even assaulted by a male doctor. The doctor was allowed to return to work. These facts are well-known within Dell Children's, including by the President and CEO of Ascension Texas, Andy Davis. According to Ms. Deb Brown, the COO of Dell Children's, "Andy more than anybody across the street understands the situation here." There is widespread recognition that something needs to be done about the culture in the Heart Center, but nothing ever is. Instead, when female employees complain, they are accused of wrongdoing, not being a "utility player," and retaliated against. This has been going on for years.

That is the environment in which Ms. Susana Gutierrez found herself when she began working for the Heart Center in October 2018. During her employment, Ms. Gutierrez was subjected to a severe or pervasive environment of sexism and misogyny. Female support staff

1

were referred to by one male doctor as his "wives." He referred to himself as "Big Daddy." Female support staff, but not male staff, were required to serve this doctor breakfast each day, which was not part of their job duties. Female staff were repeatedly berated in front of others, repeatedly interrupted or ignored, and told to stop talking. Ms. Gutierrez reported this behavior to the COO multiple times beginning in 2019. The COO was aware of the situation as were others. She said that the misogynistic environment had been escalating for years. Male colleagues admitted that the doctors did not talk to them the same way as the females in the workplace.

Yet nothing was done.

Instead, Ms. Gutierrez was accused of not being a "utility player." The toxic environment for female employees became so bad that Ms. Gutierrez's anxiety spiked, and she was left with no choice but to submit her resignation. In two last acts of retaliation against Ms. Gutierrez for reporting the sexism and discrimination she and other experienced, Ms. Gutierrez was forced to work from home for her thirty-day notice period before she was designated not rehireable.

Ascension Seton has violated the law.

## I. PARTIES

1. Plaintiff Susana Gutierrez ("Ms. Gutierrez") is an individual residing in Franklin, TX.

2. Defendant Dell Children's Medical Center of Center Texas ("DCMC") is a medical facility located in Austin, TX. Defendant that has been via its registered agent Corporation Service Company DBA CSC Lawyers, Inc., at 211 E. 7th St. Austin, TX 78701.

## II. JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint under 28 USC § 1331, these actions being brought under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, as amended.

4. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, these claims being so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

5. Venue is appropriate because the acts giving rise to this lawsuit occurred within the Western District of Texas.

### III. FACTS

6. Ms. Gutierrez first started working for Defendant as an Administrative Assistant in October 2018 for the Heart Center.

7. In August 2019, Ms. Gutierrez became the Administrative Coordinator.

8. As an Administrative Coordinator, Ms. Gutierrez, among other things, did scheduling, phone coverage, filing systems, set up for meetings, provided meeting materials as needed, provided meeting minutes, and tracked policy changes and updates for the doctors in the Heart Center.

9. Unfortunately, this included Dr. Charles D. Fraser, the Executive Director of the Heart Center and surgeons Dr. Ziv Beckerman and Dr. Carlos Mery.

10. Both Dr. Fraser and Dr. Beckerman have received multiple complaints of misogyny and sex discrimination from female subordinates as well as have been accused of creating a hostile work environment based on sex.

11. These complaints have made their way to the Ms. Deb Brown, COO of Dell Children's, to Meena Iyer, CMO of Dell Children's, to Christopher Born, President of Dell Children's, and all the way to Andy Davis, President and CEO of Ascension Texas.

12. According to Ms. Brown, their behavior had been escalating for years.

13. Within six months of Ms. Gutierrez starting her position, the hostile work environment based on sex asserted itself and would continue until her last day.

14. Every day, Ms. Gutierrez experienced how female administrative staff were treated less than male staff. They were talked over, interrupted, ignored, yelled at, berated, scolded, and made to do tasks outside their job duties, such as fetching breakfast for male doctors.

15. This treatment of women resulted in high turnover for administrative staff. During Ms. Gutierrez's employment, the Heart Center went through at least 11 administrative assistants. This resulted in Ms. Gutierrez being asked to take on an ever-increasing amount of duties and jobs outside of her original job description and expectations, including coordinating calendars, scheduling personal meetings, scheduling travel, and engaging in recruitment efforts for UT.

16. Dr. Fraser even referred to female administrative staff, which included Ms. Gutierrez, as his "wives."

17. In addition to the daily acts of sexism that created a hostile environment for female employees, there are also several incidents of note during that occurred during Ms. Gutierrez's employment.

18. On April 23, 2019, Dr. Fraser summoned Ms. Gutierrez into his office where he proceeded to berate her, claiming that his calendar was a mess and that he deletes meeting invites that he receives. He then threatened Ms. Gutierrez's job, stating that if he responds to the invites himself, then what does he need her for.

19. On July 15, 2019, Ms. Gutierrez spoke with Ms. Brown about the hostile work environment based on sex, specifically mentioning the way she and other female employees are spoken to by male doctors and surgeons and asked for help. Nothing was done.

20. On November 18, 2019, Ms. Gutierrez received a call from Dr. Beckerman. Dr. Beckerman was known to have a violent temper and demeaning attitude towards women in the workplace. Over the phone, Dr. Beckerman aggressively yelled at Ms. Gutierrez about the board in the office that shows scheduled cases, which was something Ms. Gutierrez was not responsible for.

21. Dr. Beckerman apparently had Ms. Gutierrez on speaker phone and engaged in his rant in front of a male faculty advisor, Dr. Lok Sinha, and others.

22. Later that day, Dr. Sinha encouraged Ms. Gutierrez to file a complaint about the way Dr. Beckerman spoke to her on the phone and said that she should not have to tolerate that.

23. On December 20, 2019, Dr. Carlos Mery yelled at Ms. Gutierrez about his calendar in front of Surgical Nurse Navigator Amanda Thompson.

24. On January 7, 2020, Dr. Fraser called an impromptu team meeting with Ms. Gutierrez, the surgical nurse navigators, and the surgical nurse practitioners, all of whom are women. He called himself a dictator and stated that they are at war.

25. Due to the constant harassment, on March 5, 2020, Ms. Gutierrez tried to resign.

26. She informed Ms. Brown that she was being treated poorly and yelled at by Dr. Fraser, Dr. Carlos Mery, and Dr. Beckerman for matters outside of her control.

27. Ms. Brown refused to accept Ms. Gutierrez's resignation, asking her to think about it. She then attempted to shift the blame to Ms. Gutierrez, telling her that Ms. Gutierrez is a "utility player" and that she thinks Ms. Gutierrez is trying not to be a good utility player. Ms. Brown then told Ms. Gutierrez that she seems like she is burned out.

28. Ms. Gutierrez decided not to resign.

29. On February 22, 2021, Dr. Fraser called a meeting with Ms. Gutierrez and the female clinic manager Jan Alexander. During that meeting, Dr. Fraser repeatedly refers to himself as "Big Daddy," saying things like "what Big Daddy wants, Big Daddy gets" and "Big Daddy is tired of having these conversations."

30. Over the next several months the environment for female employees at the Heart Center continues to deteriorate to the point where on August 18, 2021, Dr. Beckerman physically assaulted a female nurse practitioner.

31. The only action Defendant took was to suspend Dr. Beckerman for three months from clinical duties. He was still allowed to perform administrative work in a new office provided to him by Defendant. Then after that, he returned to Dell Children's.

32. On November 8, 2021, prior to Dr. Beckerman's return, Ms. Gutierrez emailed Mr. Born, Ms. Brown, and Chief Medical Officer Dr. Meena Iyer expressing concerns for her own safety.

33. On November 9, 2021, Mr. Born informed Ms. Gutierrez that concerns regarding disruptive behavior, workplace violence, harassment, or other inappropriate behavior are investigated thoroughly and addressed through the appropriate processes. He added that it is imperative that concerns are promptly reported so they can address any issues.

34. Dr. Fraser's dismissive attitude towards the female staff is exemplified by a statement he made on November 16, 2021. Ms. Gutierrez was setting up for a Steering meeting involving Dr. Fraser, Mr. Born, and others. Mr. Born, referring to the Heart Center team said, "I'm surprised they don't care [about the return of Dr. Beckerman]." Dr. Fraser dismissively replied, "Don't give it life it doesn't deserve."

35. Mr. Born's impression was not correct as Ms. Gutierrez's November 8, 2021 email shows and the following text exchange, which shows female administrative staff were not even asked about his return:



36. Moreover, on November 29, 2021, Jen Flores, an Operating Room nurse, told Ms. Gutierrez that she did not feel safe with Dr. Beckerman and does not know if she can be in the same room with him.

37. Nevertheless, on November 19, 2021, team meetings were held to inform DCMC staff that Dr. Beckerman was returning, and that he wanted to speak with female staff. Mr. Born asked the female staff to forgive Dr. Beckerman.

38. On April 1, 2022, Angela Ortega, Dr. Fraser's fifth administrative assistant in less than 4 years, came to Ms. Gutierrez's office crying. She informed her Dr. Fraser had just yelled

at her, telling her she was terrible at her job and that his calendar was a mess. Ms. Ortega expressed her belief that Dr. Fraser has no respect for women. She resigned a month later.

39. On June 3, 2022, Ms. Gutierrez and female coworkers Ashley Manning and Anne Wilson were in the office working when Dr. Fraser entered the room and informed them that he was going to get his breakfast. He stepped away and when he returned, he demanded to know where his breakfast was. He got upset and stated, "if I'm here, alive and breathing, I want someone to get my breakfast."

40. He never made these kinds of demands to male staff or spoke to them in a similar manner. This fact did not go unnoticed by other employees.

41. In fact, male administrative staff member, Matt Hooker, stated later that day that Dr. Fraser did not respect women and that he would have never talked to him, a man, the same way.

42. On July 6, 2022, Ms. Manning messaged Ms. Gutierrez informing her that Dr. Fraser made her feel uncomfortable and that she could not control her anxiety and was struggling.

43. On July 8, 2022, Dr. Fraser held a team meeting where he said that things needed to be done his way. Additionally, Dr. Fraser repeatedly talked over, interrupted, and tried to shut up a female Nurse Navigator who was explaining something.

44. On July 15, 2022, Ms. Gutierrez once again informed Ms. Brown of the hostile work environment based on sex that existed at the Heart Center. That meeting was recorded. According to an email from Ms. Gutierrez on July 20, 2022, this is how Ms. Brown responded during the meeting:

When I [Ms. Gutierrez] addressed my concerns to you, you informed me that Andy Davis is aware and assured me that when others go to you, you take it to Chris Born who then takes it to Andy (now that Chris reports to Andy) and "**Andy more than anybody across the street understands the situation here**". You said, he's aware of the cultural things within the cardiac service line that are concerning and there will be some actions taken and some very direct initiatives for the

cardiac program that will be rolled out at some point. You added that these initiatives will be addressing culture and difficult personalities and there is new recognition that **something has to be done "after years of escalating".** Additionally, you brought to my attention that **Dr. Fraser has been spoken to periodically over the last 4-5 years but things haven't changed.** I appreciate you telling me that you understand what I'm saying but feel a bit confused when you tell me there have been years of escalation and also telling me that you don't have anything documented that requires a formal legal compliance HR investigation.

45. Ms. Gutierrez also informed Mrs. Brown that because of her stressful working environment, she has been literally sick on her drive home, feeling physical pain and discomfort on many occasions.

46. Throughout this time, Ms. Gutierrez had also been seeing her doctor regarding her anxiety that was caused by the hostile work environment based on her sex and tried to receive counseling from her therapist regarding what she could do about it.

47. After substantial harassment and discrimination, Ms. Gutierrez had no choice but to submit her 30-day resignation notice on July 18, 2022.

48. On July 20, 2022, Ms. Gutierrez reached out to the Employee Assistant Program, which advised her to attend weekly counselling sessions, acknowledging the high emotional distress she was experiencing.

49. On that same day, Ms. Gutierrez filed a formal complaint about Dr. Fraser to the Dell Children's Values Line. This resulted in further harassment and retaliation from Ms. Brown.

50. For example, Ms. Gutierrez was then suddenly restricted from working onsite and told to complete the remainder of her employment from home. This would make performing her job duties nearly impossible.

51. On July 25, 2022, Ms. Gutierrez emailed Ms. Brown asking why she was banned from working onsite and for greater clarity on her work responsibilities moving forward. She did not receive a response.

52. On July 28, 2022, Ms. Gutierrez reached out to Human Resources representative Maria Grahl regarding her complaint but was ignored.

53. On August 16, 2022, Ms. Gutierrez emailed Ms. Brown and Ms. Grahl inquiring about her eligibility for rehire and was ignored.

54. On August 17, 2022, Ms. Brown told Ms. Gutierrez that she was going to be designated as not rehireable. This was strange because Ms. Gutierrez had resigned with nothing but good performance ratings and no disciplinary history. This was just one more act of retaliation from Defendant.

55. During Ms. Gutierrez's employment, there was remarkably high turnover at Dell Children's. In fact, 78 employees, almost all of which were women, left Dell Medical during her time there. Many of those cited the toxic and sexist work environment as the reason for leaving.

56. The sexism and misogyny was well known. According to one witness statement from Dr. Beckerman's former assistant, "I worked as Dr. Beckerman's administrative assistant for one year and a half, much longer than I intended. Within the first few weeks of my time with him I had already experienced the aggressive and disrespectful approach he takes to working with women like myself (who are not in positions of authority)."

57. According to another statement, "The hospital had a misogynistic culture where women were not valued and were often treated with disrespect. I saw this in the way that female colleagues were spoken to and in the way that they were excluded from important decision-

making processes. It was clear that the hospital's leadership did not prioritize creating a safe and inclusive work environment for all staff members."

58. There are numerous other texts and messages detailing the hostile environment for women at Dell Children's.

59. On March 14, 2023, Ms. Gutierrez submitted a charge of discrimination with the United States Equal Employment Opportunity Commission.

60. On March 24, 2023, the EEOC issued a right to sue.

## IV.  CAUSE OF ACTION: VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT

61. Plaintiff incorporates the paragraphs above as if restated herein.

62. Plaintiff has exhausted all available administrative remedies by filing a claim with the Equal Employment Opportunity Commission. Plaintiff received her right to sue on March 24, 2023.

63. To establish a prima facie case of discrimination under Title VII of the Civil Rights Act, a plaintiff can show (1) they are a member of a protected class (2) they were qualified for their position, (3) they experienced an adverse employment action and (4) similarly situated individuals were treated more favorably.

64. Plaintiff is a member of a protected class as she is female.

65. Plaintiff was qualified for her position.

66. Plaintiff experienced an adverse employment action as detailed above in the facts section because of her sex, which does not require an ultimate employment action. Hamilton v. Dallas County, 79 F.4th 494, 506 (5th Cir. 2023).

67. As detailed above, male administrative employees were treated more favorably.

68. Plaintiff also experienced a hostile work environment based on sex, which is a form of disparate treatment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

69. As described above in the facts section, the environment was severe or pervasive and well-known to management all the way up to the president and CEO.

70. Defendant failed to take prompt remedial action to address the issues.

71. As described above, the hostile work environment affected the terms, conditions, privileges, and benefits of Plaintiff's employment to create an abusive working environment.

## V. CAUSE OF ACTION: RETALIATION UNDER TITLE VII

72. Plaintiff incorporates the paragraphs above as if restated herein.

73. Plaintiff has exhausted all available administrative remedies by filing a claim with the Equal Employment Opportunity Commission. Plaintiff received her right to sue on March 24, 2023.

74. To establish a prima facie case of retaliation under Title VII of the Civil Rights Act, a plaintiff can, but is not required to, show she engaged in protected activity, suffered an adverse action, and that there is a causal link.

75. Plaintiff was engaged in a protected activity as she was opposed discrimination on the basis of her sex.

76. Plaintiff was qualified for her position.

77. Plaintiff experienced adverse employment actions as detailed above in the facts section.

78. There is a causal connection.

79. Defendant's actions have caused injury to Plaintiff.

## VI. JURY DEMAND

80. Plaintiff demands trial by jury.

## VII. DAMAGES

81. Plaintiff seeks all damages allowed under the law, including monetary relief like back pay, benefits, lost wages and:

   (a) Plaintiff seeks additional equitable relief as may be appropriate such as reinstatement, promotion, front pay, and court costs.

   (b) Plaintiff seeks compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, medical expenses, and other nonpecuniary losses.

   (c) Plaintiff seeks punitive damages because Defendant acted malicious or with reckless disregard for the law.

   (d) Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

   (e) Plaintiff seeks pre and post judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Plaintiff respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

>Respectfully submitted,
>WILEY WALSH, P.C.
>
>By: _____/s/ Colin Walsh_____
>Colin Walsh
>Texas Bar No. 24079538
>*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*
>
>WILEY WALSH, P.C.

1011 San Jacinto Blvd., ste 401
Austin, TX 78701
Telephone: (512) 271-5527
Facsimile: (512) 201-1263
Colin@wileywalsh.com
ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2024, I served a copy of the foregoing on counsel for Defendants via e-filing.

*/s/Colin Walsh*

Colin Walsh